914 So.2d 15 (2005)
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, Appellant/Cross-Appellee,
v.
Floyd WOMACK, Appellee/Cross-Appellant.
No. 5D03-2493.
District Court of Appeal of Florida, Fifth District.
September 16, 2005.
Rehearing Denied November 16, 2005.
*16 William H. Congdon, Palatka, for Appellant/Cross-Appellee.
Roy B. "Skip" Dalton, Jr., Shannon McLin Carlyle, Christopher V. Carlyle and Gilbert S. Goshorn, Jr., of counsel, of The Carlyle Appellate Law Firm, The Villages, and Michael D. Jones of Michael D. Jones & Associates, P.A., Winter Springs, for Appellee/Cross-Appellant.
Valerie A. Fernandez and Steven Gieseler, Coral Gables, Amicus Curiae for Pacific Legal Foundation.
PETERSON, J.
The St. Johns River Water Management District, ("District"), appeals an Amended Final Judgment in which the trial court made detailed findings and concluded that the District members were unduly influenced, by private interests, to set aside their public responsibilities in denying Floyd Womack's application for a management and storage of surface waters permit. The amended final judgment is fully set forth in the appendix to this opinion.
The first time this cause appeared before this court it was remanded for lack of finality to enable the trial court to issue a final judgment and to address the applicability of section 373.617, Florida Statutes, raised as an issue in count V of Womack's complaint. While we believe the successor judge exceeded the authorization and instructions upon remand by reversing in part the original judge's findings in favor of Womack, we now find the error to be harmless.

THE PROPERTY
Womack's property contains 3 acres of forested uplands and 4 acres of forested wetlands within the Riparian Habitat Protection Zone, ("RHPZ"); thus, 7 acres of Womack's 7.6 acres is within the RHPZ. The property is densely wooded and heavily vegetated with a steep elevation drop of 23 feet from east to west toward the river.

THE APPLICATIONS
Womack submitted a total of six plans to the District, all of which were reviewed by the District's staff who recommended that each application be denied. The first five applications were prepared by a professional engineer who had experience in preparing applications for District approval and each of the first four applications were amended in order to attempt to eliminate objections to Womack's planned development. The District Board never took final action on any of the initial five applications; instead, Womack withdrew the initial five applications to submit an amended application.
The final application was prepared by Womack after his engineer advised him that he could no longer assist Womack because he had exhausted his ideas to eliminate District objections. Apparently frustrated by previous attempts with professional assistance, Womack submitted a self-made application that provided no assurances that the described project would not adversely affect aquatic and wetland *17 dependent species or the quality and quantity of water entering the Wekiva River, as mandated by the Florida legislature. The District solicited information from Womack's engineer about the self-made application. In response the engineer denied any responsibility for the application and stated that he had previously withdrawn his engineering certification. Significantly, the engineer and another of Womack's expert witnesses at trial opined that Womack's final self-made application was properly rejected by the District.
The District Board took final action by denying Womack's application because the application did not provide reasonable assurances that his proposed plan would comply with conditions necessary for issuance of a permit including reasonable assurances that there would be no or minimally adverse affects upon wetland dependent species or water quality and quantity.

THE LITIGATION
Womack did not appeal the District's final denial. Instead, he filed suit in circuit court alleging the District's action violated his equal protection and substantive due process rights, resulting in a temporary and permanent inverse condemnation of his land, and violated section 373.617, Florida Statutes.

CONCLUSION
Although we are reluctant to do so in view of the factual findings of impropriety during the District's proceeding, we must reverse the trial court's finding for Womack on count I. The District never took, nor was it requested to take, final action on any of the five professionally prepared applications. The only application upon which final action was taken was Womack's self-made application that, even in his own expert's opinion, was insufficient to warrant approval. We affirm the amended final judgment finding for the District under the remaining counts.
REVERSED IN PART; AFFIRMED IN PART.
SHARP, W., and MONACO, JJ., concur.

APPENDIX
IN THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR SEMINOLE COUNTY, STATE OF FLORIDA

FLOYD WOMACK, Plaintiff,
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, Defendant,

CASE NO. 92-CA-3044-14-K

June 1, 2004.

AMENDED FINAL JUDGMENT
THIS CAUSE came to this court upon an order of the Fifth District Court of Appeal dated March 22, 2004, relinquishing jurisdiction of this cause to this court with specific directions to render an appealable final judgment by April 12, 2004. The time for rendition of the amended final judgment was subsequently extended to June 1, 2004. This Amended Final Judgment constitutes this court's compliance with the order relinquishing jurisdiction. The undersigned was not the judge who tried the case. The findings beginning in the next paragraph below are the findings of the trial judge. Thomas Freeman, who has since returned to private practice.
On March 3, 2003, the court heard testimony, received documentary evidence, heard argument of counsel and tried the issues of the pleadings in this cause. Based upon all of the above, and having personally observed each witness who testified and having reviewed all of the exhibits, and the memoranda of law makes the following findings of fact:

*18 FINDINGS OF FACT

1. The Plaintiff, WOMACK, purchased approximately seven and one-half (7-1/2) acres of property situated on the Wekiva River, located in Seminole County, in 1978, with the idea of future development.
2. Fred and Patricia Harden purchased property immediately south of Womack's property in 1982 and Phillip and Judy Wick purchased property immediately south of the Harden property in 1986.
3. Patricia and Fred Harden were very active in an organization called the Friends of the Wekiva.
4. Jeff Elledge, then director of the Department of Resource Management and Regulatory Program for the District worked in concert with the Friends of the Wekiva River and specifically Patricia Harden, to draft the proposed legislation to protect the Wekiva River.
5. In 1988, the Legislature adopted the Wekiva River Protection Act and under the Act, a Riparian Habitat Protection Zone (RHPZ) was established and went into effect in 1989. The RHPZ would consist basically of a 550 foot zone on both sides of the river that ran through Orange, Seminole and Lake Counties.
6. Before the RHPZ was adopted, the Hardens and the Wicks on the same day, April 8, 1987, pulled building permits from Seminole County to build separate structures that were approximately 200 feet from the river. Their homes were grand-fathered under the proposed "RHPZ" rule.
7. In 1989, Womack listed his property for sale with the idea of dividing the property into three lots, each consisting of approximately two and one-half (2-1/2) acres. Seminole County regulations required Womack to go through the subdivision process. After the proposed subdivision was found to be in compliance with the Department of Community Affairs' regulations governing the Wekiva River Basin, the County waived the subdivision regulations and approved the subdivision. Approval was subject only to the St. John's River Water Management District's approval of the proposed development.
8. In April 1990, the Wicks and the Hardens notified Seminole Count of their opposition to the subdividing of the Womack property, alleging among other things, that additional wells and homes would impair wildlife functions in the area and that the Womack property was out of compliance with the Wekiva River Protection Act.
9. In June 1990, Womack was notified by the District that he would be required to obtain a Management and Storage of Surface Water Permit and meet certain other criteria, because a portion of his property was in the RHPZ. Pursuant to the Notice, Womack and his consultants met in the Orlando office with Lance Hart, the District's head environmental specialist, who told Womack that the District would never permit the project.
10. On November 2, 1990, Ron Henson, an engineer on behalf of Womack, submitted the first set of engineering plans to the District, utilizing the same storm water drainage system and RHPZ protection that had previously been permitted with the District.
11. The District requested a site inspection of the Womack property and several members of the District staff met with Womack and his consultants on-site. After the site inspection, the District employees went to the Harden home immediately south of the Womack's property and spent an hour with the Hardens before departing.
12. On November 28, 1990, Fred Harden notified the District, and specifically *19 Jeff Elledge, of his objection to the Womack project. Elledge testified at trial that but for Harden's letter, the Womack permit could have been processed as a General Permit, but because of the objection, it had to be processed as an Individual Permit, which required the approval of the Governing Board.
13. Patricia Harden was appointed to the St. John's Water District Board in March of 1991, and three months later, was named chairman of the Board.
14. On July 7, 1991, Patricia Harden, then chairman of the St. John's Board publicly stated and was quoted in the local newspaper that she "did not think the Water district should give Womack a permit." The land, she stated, "was the last undeveloped chunk of wilderness connecting two state owned areas."
15. Between November of 1990 and July 1991, Henson on behalf of Womack submitted three separate, detailed development plans to the District. Although Henson utilized storm water treatment facilities and RHPZ protection proposals, as he had in the other plans submitted, the District filed a Notice of Intent to Deny for each plan.
16. On July 9, 1991, the third plan prepared by Henson was submitted to the Governing Board.
17. The Governing Board and Board member Hill, asked Womack if he could go back and "meet with our staff, and the Friends of the Wekiva, and work out any differences."
18. On July 17, 1991, Womack and his consultants attended a meeting in the Orlando District Office and met with a number of the District's staff, as well as representatives from the Friends of the Wekiva, which included Fred Harden and the Wicks, along with Patricia Harden, who noted she was attending as a "citizen." The District made demands upon Womack, which included the reduction of the "development envelopment" on each lot by sixty-two percent (62%), from 6,300 square feet to 2,400 square feet. It further required the shift of development outside of the RHPZ; and to obtain a variance from Seminole County for side yard setbacks and to establish a homeowner's association for the three homes and provide a conservation easement over the remainder of the undeveloped property.
19. By letter dated July 23, 1991, the District outlined specifically the demands and noted that the demands were based upon discussions, and the concerns of the Friends of the Wekiva. The District stated the Friends of the Wekiva were going to challenge the issuance of the permit.
20. The evidence established that during the same time frame, and particularly in 1990 and 1991, Seminole County had approved a number of structures with the RHPZ. The District issued permits for these structures, some for a General Permit and some through an Individual Permit issued upon the recommendation and staff approval. During this time, Womack's engineer, Henson, had prepared and presented five (5) separate engineering plans to the District, and on each occasion, the District responded with Intent to Deny the Womack Permit.
21. Henson's fifth, and final plan, for the District included a retention pond, berm and infiltrator chambers, a 5.2 acre conservation easement and the planting of 120 trees. The District issued a Notice of Intent to Deny the permit. Engineer Henson advised Womack that he had done everything that he knew to do and it was obvious that the District was not going to allow development of the property.
22. After Henson advised Womack that he was wasting his money on engineering *20 because the District would not approve any development, Womack on his own submitted a plan. The District issued a Notice of Intent to Deny.
23. The final Womack plan, which showed three proposed house pads an average of 400 foot from the river's edge, allowed for natural storm water treatment. Because of the slope and density of the natural undergrowth, as noted by other testimony, the storm water drainage would sheet flow through approximately 400 feet of dense undergrowth and filter effectively.
24. The Board denied Womack's application on August 11, 1992 and issued its Final Order on November 10, 1992.
25. Womack filed this action on November 27, 1992.
26. The District's Applicant Handbook at Section 10.2.1, allowed for the use of "alternative methods as may be appropriate for the specific system" but the District would not consider Womack's proposed alternate methods.
27. The court finds the convincing testimony of Ron Henson, the engineer, and Dr. Dennis, the environmental consultant, who stated that any one of the plans, including that submitted by Womack, were permittable. Neither Henson nor Dennis could figure a legitimate basis for the continued denial of each plan submitted. The proposed house pads were an average of 400 feet from the river's edge and the evidence supported the soil engineer's report that retention ponds and/or infiltrator chambers would have handled the storm water runoff.
28. In fact, the final plan submitted by Womack would have been an alternate method that should have been acceptable.
29. The only reasonable conclusion for the continual denial of the Womack application was Chairman Pat Harden's control of District personnel and the collusion between the members of the St. John's Water District at her request and requirement.
30. Steve Matonis, an MAI appraiser, stated the value of the property as of November 10, 1992 and the value of the temporary taking of the property. Matonis considered the District's appraisal report and was in agreement with the same, concluding that as of November 10, 1992, the property had a fair market value of $372,000.00. Matonis further testified that the value of temporary taking of the property from November 10, 1992, through the date of the trial was $245,000.00. Matonis' testimony was unrefuted.
31. The parties have stipulated that Womack during the permitting process incurred expenses in the amount of $17,384.73.
32. The court finds for the Plaintiff Womack on Count I, the Equal Protection Claim.
33. The St. John's Water District under the Chairmanship of Pat Harden conspired to deny all applications by Womack for the development of his property. The actions of the Board were based upon personal interest of the Hardens and the Friends of the Wekiva.
34. The court specifically finds that the St. John's Water District unlawfully allowed a private entity, the Friends of the Wekiva, to unduly influence the issuance of a development permit on the Womack parcel and set aside their public responsibilities to favor the Friends of the Wekiva.
35. The evidence which is unrefuted, shows that Womack is entitled to damages for the denial of the equal protection under 42 USC 1983 in the amount of $262,384.00.
36. St. John's Water Management District has stipulated that it will bear the financial responsibility for the wrongful acts of its board members.
*21 37. Count II, a cause of action based upon the violation of substantive due process shall be decided in the favor of the St. John's Water District. The Plaintiff failed to show by a preponderance of the evidence that Womack should prevail on this Count.
38. Count IV, a cause of action based upon the taking of the Womack property without just compensation shall be decided in the favor of the St. John's Water District. The Plaintiff failed to show by the preponderance of the evidence that Womack should prevail on this Count.
39. Count V, a cause of action based upon Florida Statutes 373.617 shall be in favor of St. John's Water Management District. The Plaintiff failed to show by a preponderance of the evidence that the Plaintiff should prevail on this Count.
It is therefore ORDERED and ADJUDGED as follows:
A. Final Judgment is rendered in favor of the Plaintiff on Count I in the amount of $262,384.00, which shall bear interest at the legal rate, for which sum let execution issue.
B. The Plaintiff shall take nothing by Counts II, IV and V, and the Defendant shall go hence without day with respect to these Counts.
C. The court reserves jurisdiction for the awarding of attorneys' fees and costs.
DONE AND ORDERED in Chambers at Sanford, Seminole County, Florida this 27th day of May, 2004.
/s/Marlene M. Alva
MARLENE M. ALVA
Circuit Judge